United States District Court
Southern District of Texas

**ENTERED**
September 22, 2022
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DONALD CLINT CARGILL, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action No. H-20-3605 |
| | § | |
| BETTY J. WILLIAMS, *et al.,* | § | |
| | § | |
| *Defendants.* | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, a state inmate proceeding *pro se* and *in forma pauperis*, filed an amended complaint under 42 U.S.C. § 1983 against University of Texas Medical Branch – Correctional Managed Care ("UTMB-CMC") employees Betty J. Williams, M.D., Mark A. Barber, D.O., Chidinma Onuigbo, N.P., Khari Mott, and Bobby Vincent, M.D. (Docket Entry No. 23.)[1]  Defendants filed a motion for summary judgment on January 6, 2022 (Docket Entry No. 36), and served plaintiff a copy of the motion that same date. Despite expiration of a reasonable period of time in excess of eight months, plaintiff has not filed a response to the motion and the motion is deemed unopposed.

---

[1]Although plaintiff subsequently filed another amended complaint (Docket Entry No. 26), it was filed without leave of court and appears to be a service copy of his earlier amended complaint. The Court has not relied on the unauthorized amended complaint for purposes of this summary judgment proceeding.

Having considered the motion, the probative summary judgment evidence, the record, and the applicable law, the Court **GRANTS** the motion for summary judgment and **DISMISSES** this case for the reasons explained below.

## I. BACKGROUND AND CLAIMS

Plaintiff states that he sustained a spinal cord injury during an altercation with police officers in 2017 and underwent spinal fusion surgery while in pretrial detention. His surgeon gave him baclofen and gabapentin for post-surgery pain and spasms, a drug combination that apparently worked well for plaintiff.[2] Plaintiff was subsequently found guilty of three felony offenses in May 2018 and was sentenced to serve a fifty-year term of incarceration in the Texas Department of Criminal Justice ("TDCJ").

Plaintiff reports he was led to believe that he would continue receiving baclofen and gabapentin while in prison. However, when he arrived at the TDCJ Estelle Unit in mid-2018, he was given baclofen but not gabapentin, leaving him with residual pain. Plaintiff claims

---

[2]"Baclofen acts on the spinal cord nerves and decreases the number and severity of muscle spasms caused by multiple sclerosis or spinal cord conditions. It also relieves pain and improves muscle movement." *Medline Plus*, https://medlineplus.gov/druginfo/meds/a682530.html (accessed August 31, 2022).

"Gabapentin [is] used along with other medications to help control certain types of seizures in people who have epilepsy. Gabapentin [is] also used to relieve the pain of postherpetic neuralgia (PHN; the burning, stabbing pain or aches that may last for months or years after an attack of shingles). . . . Gabapentin relieves the pain of PHN by changing the way the body senses pain." *Medline Plus*, https://medlineplus.gov/druginfo/meds/a694007.html (accessed August 31, 2022).

The Court provides the above information for background purposes only.

2

that the defendants' refusals to provide him a medical examination and gabapentin constituted deliberate indifference to his serious medical need for pain control.

Defendants state that an MRI of plaintiff's cervical spine taken on May 11, 2021, revealed that his cervical spinal cord signal intensity was within normal limits and that his cervical spine was without significant canal stenosis. They further state that plaintiff failed to show for seven appointments he requested for his pain complaints during July – December 2020. Defendants examined and treated him during his other appointments, sent him to the UTMB Neurology Department for evaluation, requested a radiology consult for x-rays of his spine, submitted a non-formulary request for gabapentin, and prescribed medications for his chronic pain. They assert that gabapentin is not FDA-approved for management of cervical radiculopathy and is not an approved treatment for plaintiff's medical condition. The requests for gabapentin were deferred (denied) by UTMB-CMC officials.

Plaintiff seeks monetary compensation in the amount of $500,000.00 from the defendants in their individual capacities. He did not respond to defendants' pending motion for summary judgment.

## II.  ANALYSIS

A.    Legal Standards

Summary judgment is appropriate when, viewing the evidence in the light most favorable to the non-movant, the court determines "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P.

3

56(a); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Dyer v. Houston*, 964 F.3d 374, 379 (5th Cir. 2020). In making that determination, a court must view the evidence in the light most favorable to the nonmoving party. "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine [dispute] of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007).

The court will generally "draw all inferences in the plaintiff's favor." *Dyer*, 964 F.3d at 380. However, if record evidence clearly contradicts the plaintiff's version of events, the court "should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Waddleton v. Rodriguez*, 750 F. App'x 248, 253–54 (5th Cir. 2018) (per curiam) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). If the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and present evidence such as affidavits, depositions, answers to interrogatories, and admissions on file to show "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). However, "conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *U.S. ex rel. Farmer v. City of Houston*, 523 F.3d 333, 337 (5th Cir. 2008) (cleaned up).

4

B.     Deliberate Indifference

"Deliberate indifference is an extremely high standard to meet." *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001).  A prison official may violate the Eighth Amendment's prohibition against cruel and unusual punishment if he acts with deliberate indifference to a prisoner's serious medical needs, constituting an unnecessary and wanton infliction of pain.   *Wilson v. Seiter*, 501 U.S. 294, 297 (1991).   Deliberate indifference exists where a prison employee knows of an excessive risk to inmate health or safety and deliberately disregards that risk. *Farmer v. Brennan*, 511 U.S. 825, 836 (1994). Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference to serious medical needs. *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995).

Unsuccessful medical treatment, negligence, neglect, and medical malpractice do not give rise to a section 1983 cause of action, and an inmate's disagreement with his medical care, standing alone, does not establish a constitutional violation. *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991).  The United States Supreme Court has long recognized that whether a particular form of treatment is indicated "is a classic example of a matter for medical judgment." *Estelle v. Gamble*, 429 U.S. 97, 105 (1976).  Thus, medical treatment different from what a prisoner would prefer does not establish a claim for deliberate indifference.  *Id.*, at 107.  Even if a lapse in professional judgment occurred, such a failure

5

would amount to mere negligence or malpractice, not a constitutional violation. *Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999). Deliberate indifference, as it is used in context of the Eighth Amendment, requires more than negligence but less than purposeful or knowing infliction of harm; it requires a showing of "subjective recklessness" as used in criminal law. *Farmer*, 511 U.S. at 839–40. A plaintiff must show with sufficient factual allegations, not conclusory assertions, that a defendant "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Johnson*, 759 F.2d at 1238.

C.    Affidavit of James Geddes, M.D.

In support of their motion for summary judgment, defendants submitted an affidavit of James Geddes, M.D., who testified in relevant part as follows:

> My name is James Geddes, M.D. I am over the age of 18 years, competent to make this affidavit, and have personal knowledge of the facts herein stated. I earned my Doctor of Medicine in 1976 from the University of Manitoba. I am licensed as a medical doctor by the Texas Medical Board. I am currently the Region 1 Medical Director for The University of Texas Medical Branch Correctional Managed Care (UTMB/CMC). In the last four years I have not testified as an expert at trial or in deposition. I have been with UTMB/CMC since 2016.

> I am making this affidavit in connection with Civil Action No. 4:20cv03605, Donald Clint Cargill, #2208477 v. Betty J. Williams, et al., in the United States District Court for the Southern District of Texas, Houston Division. I am familiar with UTMB/CMC policies and procedures with respect to the provision of medical care. I am not receiving any pay, save my usual salary, for review of records or preparation of this affidavit.

6

Background

Gabapentin is an anticonvulsant agent with FDA indications for adjunctive therapy in the treatment of focal (partial) seizures and postherpetic neuralgia. Non-FDA approved uses have included for alcohol dependence, diabetic peripheral neuropathy, fibromyalgia, hemodialysis-associated pruritus, hot sweats, and acute post-operative pain. While gabapentin has been used for various indications, gabapentin is not FDA approved for management of cervical radiculopathy. The North American Spine Society (NASS) published guidelines for the Diagnosis and Treatment of Cervical Radiculopathy from Degenerative Disorders in 2010 and noted "a systematic review of the literature yielded no studies to adequately address the role of pharmacologic treatment in the management of cervical radiculopathy from degenerative disorders." An UpToDate® review of the treatment and prognosis of cervical radiculopathy, recommended conservative therapy with nonsteroidal anti-inflammatory drugs (NSAIDs), avoidance of provocative activities, physical therapy, short-term neck immobilization with a cervical collar and/or cervical pillow, and a short course of oral prednisone for severe pain. They noted that "medications for neuropathic pain, such as gabapentin and pregabalin, are sometimes used in the treatment of in cervical radiculopathy, but this practice is not well supported by evidence." In 2018, a review of gabapentin off-label use was published in the journal, Substance Abuse: Research and Treatment. The authors concluded that most of the evidence for off-label use is limited to a few small, low-quality studies, often with data only weakly supporting use. The article also noted increasing reports of abuse and evidence of potential harms with gabapentin use. One of the more common off-label uses for gabapentin is for diabetic neuropathy. The American Academy of Neurology published a systematic review of pharmacotherapy for diabetic peripheral neuropathy in 2017 and concluded that gabapentin was no more effective than placebo.

Gabapentin is a nonformulary medication due to limited indications, limited efficacy, risk of abuse, and availability of formulary alternatives. The process for requesting nonformulary medications is outlined in the CMC Pharmacy Policy and Procedure Manual, Non-Formulary Medications Policy 05-10. CMC will provide patients with non-formulary medications as deemed necessary by the treating provider and subject to approval of the Pharmacy and

Therapeutics (P&T) Committee or its designee. Clinical pharmacists are assigned as the P&T Committee's designee with overriding authority granted to the Regional Medical Directors, Senior Medical Directors, Directors of Mental Health Services, and University Medical Directors.

Non-formulary requests

A first request was submitted for gabapentin by Tanesha Tran, NP for patient Cargill, Donald TDCJ #2208477 on July 15, 2020. The patient was currently on baclofen 20 mg tablet – 1 tablet twice daily (73% compliance) and ibuprofen 800 mg – 1 tablet twice daily. The noted diagnosis on the request was for spondylosis. The request was deferred based on limited efficacy, lack of a trial of other formulary agents, and risk of abuse. In the deferral, a recommendation was made for the provider to reference the CMC Neuropathic Pain disease management guidelines and to consider other formulary agents indicated for neuropathic pain including duloxetine, divalproex, and venlafaxine.

A second request was submitted for gabapentin by NP Tran on August 18, 2020. This request was deferred due to a lack of efficacy, risk of abuse and because the patient had not been trialed on other available formulary agents indicated for neuropathic pain including duloxetine, venlafaxine, and carbamazepine. In this deferral, the clinical pharmacist noted that it may take at least 6 weeks to observe efficacy and patient counseling on compliance was also recommended for Mr. Cargill. At that time, the patient was currently ordered baclofen 20 mg – 1 tablet twice daily (75% compliance) and acetaminophen 325 mg – 2 tablets twice daily.

A third request was submitted for gabapentin by Catherine Nwankwo, NP on April 5, 2021. The diagnosis noted was for spinal cord injury. At the time this third request was submitted, the patient was currently ordered baclofen 20 mg – 1 tablet 3 times daily and ibuprofen 800 mg – 1 tablet twice daily. The request was deferred for the previous reasons provided with a recommendation to refer to the CMC Neuropathic Pain disease management guideline and to consider other formulary agents including duloxetine, divalproex, and venlafaxine. The clinical pharmacist noted that it may take weeks after initiating therapy to see improvement. Patient counseling on compliance was also recommended.

8

The fourth and final request for gabapentin was submitted by Betty Williams, MD on July 6, 2021. Dr. Williams noted a diagnosis of cervical radiculopathy not clearly explained by any MRI C spine findings. The patient was currently ordered baclofen 20 mg – 1 tablet 3 times daily (68% compliance) and ibuprofen 800 mg – 1 tablet twice daily. The request was deferred for the previous reasons provided, and the above recommendations were again provided.

Based on a review of the patient's medical record, the patient had received duloxetine 30 mg once daily from March 10 – March 16, 2020, and was discontinued per the request of the patient. His noted compliance was 85%. The patient also received carbamazepine 200 mg once daily from September 22, 2020 – October 26, 2020, with a noted compliance of 97% and it was discontinued per the patient's request.

The patient also received baclofen which is available as a prior authorization agent for spinal cord injury. Baclofen may be titrated up to 20 mg QID, but the maximum dose patient received was baclofen 20 mg TID.

CMC Neuropathic Pain Disease Management Guideline

Based on the UTMB CMC DMG for neuropathic pain, the formulary agents for neuropathic pain include acetaminophen up to 4g/day, ibuprofen up to 3.2 g/day, naproxen 500 mg BID, duloxetine 60 mg/day, venlafaxine up to 225 mg/day, divalproex up to 1250 mg/day, and carbamazepine up to 1600 mg/day.

Conclusion

In conclusion, based upon my education, training, and experience as a physician in both community and correctional settings, I believe the medical care provided to Mr. Cargill has been well within the standard of care. The treating physicians and pharmacists have acted conscientiously and professionally based upon the information available to them during their dealings with Mr. Cargill.

(Docket Entry No. 36-3, pp. 1–5, footnotes to exhibits and medical literature omitted.)

9

D.    Defendant Barber

Plaintiff alleges that Mark A. Barber, D.O., evaluated him upon his arrival at the Estelle Unit.  Plaintiff informed Barber of his spinal cord injury and that his surgeon had prescribed gabapentin.  Barber told plaintiff that he could recommend plaintiff be given gabapentin, but that it would not be approved.  Plaintiff alleges that Barber failed to request gabapentin for plaintiff and that he was deliberately indifferent to plaintiff's serious medical need for pain control.

The probative summary judgment evidence shows that Barber provided plaintiff regular and consistent medical care for his neck pain commencing March 16, 2020, including prescription medications.  On that date, Barber gave plaintiff prescriptions for acetaminophen 325 mg to be taken three times daily and ibuprofen 800 mg to be taken twice daily.  (Docket Entry No. 36-1, Exhibit A, p. 116.)  On September 22, 2020, Barber added prescriptions for baclofen 20 mg three times a day and carbamazepine 200 mg once a day.  The medications were refilled throughout 2020–2021.

As noted by Geddes in his affidavit, a review of the medical literature for treatment and prognosis of cervical radiculopathy included recommendations for conservative therapy with nonsteroidal anti-inflammatory drugs (such as ibuprofen).  Articles in the medical literature reported that medications for neuropathic pain, such as gabapentin and pregabalin, were sometimes used in the treatment of in cervical radiculopathy, but their use was not well

10

supported by evidence. The authors of a 2018 article reviewing off-label use of gabapentin concluded that most of the evidence for off-label use was limited to a few small, low-quality studies, often with data only weakly supporting use. The authors also noted increasing reports of abuse and evidence of potential harms with gabapentin use.

Geddes further noted in his affidavit that gabapentin was a nonformulary medication due to its limited indications for use, limited efficacy, risk of abuse, and availability of formulary alternatives. He discussed the fact that, in July and August 2020 and again in April and July 2021, four Estelle Unit medical care providers had unsuccessfully requested gabapentin for plaintiff. Plaintiff acknowledges that Barber had warned him that requests for gabapentin would likely be denied, as it was a non-formulary medication. CMC Neuropathic Pain Disease Management Guidelines indicated that accepted formulary agents for treatment of neuropathic pain included acetaminophen, ibuprofen, naproxen, duloxetine, venlafaxine, divalproex, and carbamazepine. (Docket Entry No. 36-3, pp. 1–5.) Defendants provided plaintiff with various combinations of these medications over the course of their care and treatment of his neck pain complaints.

Plaintiff does not dispute that Barber provided him with CMC guideline-approved treatments for his neck pain and that four other Estelle Unit medical providers requested gabapentin for plaintiff and that all four requests were denied. Plaintiff fails to show that Barber denied him treatment, ignored his complaints, knowingly treated him incorrectly, or otherwise evidenced a wanton disregard for his serious medical needs. Plaintiff further fails

11

to show that Barber disregarded an excessive risk to his medical needs and subjectively intended harm to occur.

Plaintiff's disagreement with the medications prescribed by Barber does not rise to the level of deliberate indifference. Defendants are entitled to summary judgment dismissal of plaintiff's deliberate indifference claims against defendant Mark A. Barber, D.O., and the claims are **DISMISSED WITH PREJUDICE**.

E.     Defendant Williams

Plaintiff claims that defendant Betty J. Williams, M.D., ignored his numerous requests for a medical examination and gabapentin, leaving him with residual pain.

Plaintiff's allegation that Williams ignored his requests for gabapentin is refuted by the medical records. Williams noted in plaintiff's chart on July 6, 2021, that plaintiff "presents reporting a history of a cervical spine cord injury and [surgery] done in 2017. He reports his strength eventually returned but still is hyperreflexive. He also reports occasional episode [*sic*] of severe radicular pain with certain movements. He reports gabapentin helps prevent these episodes[.]" Williams noted that gabapentin had been discontinued for plaintiff at the Estelle Unit "due to length of [the] prescription." She reported that "Gabapentin has been requested THREE TIMES by providers (7/17/20, 8/21/20, and 4/6/21) and each time has been DEFERRED by clinical Pharmacist. Nevertheless will resubmit [non-formulary request] for Gabapentin 800 mg bid x 30 days (refill 11)." (Docket Entry No. 36-1, p. 48,

12

original emphasis.)   Thus, contrary to plaintiff's allegation, Williams did place a non-formulary request for gabapentin for plaintiff.

The request, however, was denied by CMC pharmacists because "a neurology review found gabapentin to be ineffective in the treatment of neuropathy" and because "reports of gabapentin drug abuse are increasing." (Docket Entry No. 36, Exhibit A, pp. 232–33.)  The pharmacy clinical specialist recommended potential alternatives to gabapentin, including duloxetine, divalproex, venlafaxine, and up to 80 mg daily of baclofen. *Id.*   Williams provided plaintiff baclofen 20 mg three times a day and ibuprofen 800 mg once a day, as per CMC guidelines and pharmacy recommendations.

The medical records also refute plaintiff's allegations that Williams ignored his requests for medical care for his neck pain.  The records show that as of June 26, 2020, plaintiff was being given Motrin and baclofen for his nerve pain, but that he wanted to get gabapentin because he was on it in the "free world" prior to his TDCJ incarceration. *Id.*, Exhibit A, p. 25.  Plaintiff was scheduled for a medical provider appointment on July 1, 2020, but was charted as a "no show."  Williams informed him that the appointment would be rescheduled, but plaintiff failed to appear for the rescheduled appointment on July 15, 2020.  The records show that plaintiff failed to appear for several scheduled medical appointments throughout 2019, 2020, and 2021. (Docket Entry No. 36-1, pp. 3–31.)  The records show that plaintiff did appear for several other clinical visits throughout 2020–2021 and was provided examinations, evaluations, laboratory testing, and non-gabapentin

13

medications for his neck pain and other medical complaints, by Williams and other Estelle Unit clinicians. Williams performed a chart review on September 25, 2020, and placed an order that plaintiff be scheduled for an appointment with the Neurology Department at Hospital Galveston to followup on his neck pain. *Id.*, p. 89. Williams discontinued carbamazepine at plaintiff's request on October 26, 2020, and requested x-rays of plaintiff's cervical spine with a radiology consultation to address his complaints of neck pain. *Id.*, p. 218. The x-rays were taken, and a diagnosis was made of "Residual cervical radiculopathy following cervical fusion." *Id.*

The medical records clearly establish that Williams requested gabapentin for plaintiff, and that the request was denied. The records further establish that Williams prescribed pain relief medications for plaintiff, and that she examined his medical complaints, ordered diagnostic testing, evaluated his condition, and provided care and treatment for his neck pain. Plaintiff's inability to obtain gabapentin does not demonstrate that Williams was deliberately indifferent to plaintiff's serious medical needs. In short, plaintiff presents no probative summary judgment evidence that Williams denied him treatment, ignored his complaints, knowingly treated him incorrectly, or otherwise evidenced a wanton disregard for his serious medical needs.

Plaintiff's disagreements with the medications and treatment provided by Williams do not rise to the level of deliberate indifference. Defendants are entitled to summary

14

judgment dismissal of plaintiff's deliberate indifference claims against defendant Betty J. Williams, M.D., and the claims are **DISMISSED WITH PREJUDICE**.

      F.    <u>Defendant Onuigbo</u>

      Plaintiff claims that defendant Chidinma Onuigbo, a nurse practitioner, ignored his requests for a medical examination and gabapentin, leaving him with residual pain.

      Plaintiff's allegations are refuted by his medical records, which show that Onuigbo examined, evaluated, treated, and provided medications for plaintiff. On February 24, 2020, plaintiff was seen by Onuigbo for complaints of chronic neck pain and requested renewal of his ibuprofen prescription. Plaintiff agreed with Onuigbo's suggestion that he try meloxicam for the pain. (Docket Entry No. 36-1, Exhibit A, pp. 120–21.) Onuigbo prescribed meloxicam, ordered labs to monitor plaintiff's renal function, and educated him on the risks of taking non-steroidal anti-inflammatory drugs to relieve pain. *Id.*

      On March 10, 2020, Onuigbo prescribed plaintiff duloxetine for his chronic pain because he had stopped taking the meloxicam. Onuigbo advised him that the likelihood of his being approved for gabapentin was very low. *Id.*, p. 116. Plaintiff asked to speak with a local provider, and he subsequently saw defendant Barber on March 16, 2020. Id., p. 117.

      The medical records do not show that Onuigbo denied plaintiff treatment, ignored his complaints, knowingly treated him incorrectly, or otherwise evidenced a wanton disregard for his serious medical needs. To the contrary, Onuigbo worked with plaintiff to find an acceptable pain medication, and prescribed other formulary medications when plaintiff

15

declined to continue taking meloxicam. *Id.*, pp. 120–121, 196. Although plaintiff complains that Onuigbo did not request gabapentin for him, the Court noted earlier that four other medical care providers requested gabapentin for plaintiff and all four requests were denied. Plaintiff proffers no probative summary judgment evidence that a request by Onuigbo would have been approved.

As previously explained, "[u]nsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances." *Gobert*, 463 F.3d at 346. Plaintiff's dissatisfaction with the medical treatment provided by Onuigbo does not constitute deliberate indifference, as plaintiff enjoys no constitutional right to direct his medical care or the medications he receives. Nothing in the record before this Court supports plaintiff's claim that Onuigbo knew of and disregarded an excessive risk to plaintiff's health or recklessly disregarded plaintiff's serious medical needs.

Plaintiff's disagreements with the medications and treatment provided by Onuigbo do not rise to the level of deliberate indifference. Defendants are entitled to summary judgment dismissal of plaintiff's deliberate indifference claims against defendant Chidinma Onuigbo, and the claims are **DISMISSED WITH PREJUDICE**.

G.     Defendant Mott

Plaintiff claims that defendant Khari Mott, a UTMB-CMC business manager, recklessly disregarded his Step 1 grievances requesting gabapentin and ignored his requests

16

to see a medical provider.  In essence, plaintiff claims that Mott was deliberately indifferent to his serious medical needs by failing to investigate and process plaintiff's grievances in a satisfactory manner.

It is well settled that an inmate does not have a federally protected liberty interest in having his grievances resolved to his satisfaction. *See Geiger v. Jowers*, 404 F.3d 371, 373–74 (5th Cir. 2005).  Consequently, plaintiff's dissatisfaction with Mott's investigation and resolution of his administrative grievances fails to raise a viable section 1983 claim for relief.

Plaintiff's factual allegations against Mott do not rise to the level of a constitutional issue.  Defendants are entitled to summary judgment dismissal of plaintiff's claims against defendant Khari Mott, and the claims are **DISMISSED WITH PREJUDICE**.

H.    Defendant Vincent

Plaintiff alleges that defendant Bobby Vincent, M.D., a UTMB-CMC regional medical director, controlled TDCJ/UTMB-CMC pharmacy decisions and was responsible for denying his medical provider's requests for gabapentin.  Plaintiff claims that Vincent was deliberately indifferent to his serious medical need for gabapentin to control his neck pain.

The medical records do not indicate that Vincent provided any medical care or treatment to plaintiff, or that it was his duty to provide medical care to plaintiff.  To the contrary, plaintiff claims that Vincent was responsible, in whole or in part, for the deferrals of his care providers' requests for gabapentin.  Whether it was Vincent or a different UTMB-CMC employee who deferred the requests, no deliberate indifference is shown.  Plaintiff had

17

no constitutional right to be given gabapentin for his neck pain, and the denials of his providers' requests for gabapentin did not violate his Eighth Amendment rights.

Moreover, the probative summary judgment evidence before this Court does not demonstrate that Vincent knew that denying the requests for gabapentin constituted an excessive risk to plaintiff's health and safety and that Vincent deliberately disregarded the risk. Nor is there any probative summary judgment evidence that Vincent denied plaintiff treatment, ignored his complaints, knowingly treated him incorrectly, or otherwise evidenced a wanton disregard for his serious medical needs. The gabapentin deferrals were based on limited efficacy, lack of a trial of other formulary agents, and risk of abuse. Other established pain relief medications were recommended, and plaintiff's medical care providers prescribed those medications for him. Plaintiff was not denied medications for his neck pain; he was denied his *preferred* medication for his neck pain. This does not constitute deliberate indifference to his serious medical needs.

Plaintiff's disagreements with any professional decisions made by Vincent in the exercise of his medical judgment do not rise to the level of deliberate indifference. Defendants are entitled to summary judgment dismissal of plaintiff's deliberate indifference claims against defendant Bobby Vincent, M.D., and the claims are **DISMISSED WITH PREJUDICE**.

I.    <u>Qualified Immunity</u>

The defendants assert entitlement to qualified immunity in their motion for summary judgment. The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223 (2009).

A good faith assertion of qualified immunity alters the usual summary judgment burden of proof, shifting it to the plaintiff to show that the defense is not available. *Ratliff v. Aransas County, Texas*, 948 F.3d 281, 287 (5th Cir. 2020). Once the defense is invoked, the plaintiff must rebut it by establishing that the defendant violated a federal statutory or constitutional right and that the unlawfulness of the conduct was clearly established at the time. *Rich v. Palko*, 920 F.3d 288, 294 (5th Cir. 2019). A plaintiff seeking to meet this burden on summary judgment "may not rest on mere allegations or unsubstantiated assertions but must point to specific evidence in the record demonstrating a material fact issue concerning each element of his claim." *Mitchell v. Mills*, 895 F.3d 365, 370 (5th Cir. 2018) (citations omitted).

Plaintiff did not contest the defendants' claims of entitlement to qualified immunity, and has not met his burden of proof to rebut their claims. Even so, the Court has determined above that the defendants were not deliberately indifferent to plaintiff's serious medical needs, and no constitutional violations have been established. Accordingly, the defendants

are entitled to qualified immunity as to plaintiff's Eighth Amendment claims, and plaintiff's claims for deliberate indifference are **DISMISSED WITH PREJUDICE** as barred by qualified immunity.

### III.  CONCLUSION

For the above reasons, defendants' motion for summary judgment (Docket Entry No. 36) is **GRANTED** and plaintiff's claims against the defendants are **DISMISSED WITH PREJUDICE**.  Any and all pending motions are **DISMISSED AS MOOT**.

Signed at Houston, Texas, on this the 21st day of September, 2022.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

20